UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                              :

ANIBAL AVILLAN,                         :

                          Plaintiff,     :             13 Civ. 509 (PAE)

                              :            <u>OPINION & ORDER</u>

         -v-                  :

PATRICK R. DONAHOE, *Postmaster General of the*
*United States Postal Service,*           :

                     Defendant.   :

------------------------------------------------------------------------X

```
┌─────────────────────────────┐
│ USDC SDNY                   │
│ DOCUMENT                    │
│ ELECTRONICALLY FILED        │
│ DOC #:_____       │
│ DATE FILED: 2/19/15         │
└─────────────────────────────┘
```

PAUL A. ENGELMAYER, District Judge:

       Plaintiff Anibal Avillan brings claims of retaliation against Patrick R. Donahoe, in his

official capacity as Postmaster General of the United States Postal Service ("USPS"), under Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and under the Age

Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA").  Avillan, a USPS

custodial worker, alleges he was retaliated against after complaining about discrimination based

upon his race, national origin, and age.  Specifically, he claims, this retaliation took the form of

USPS's not paying him for certain days on which he had been given authorization to be away

from work to attend Equal Employment Opportunity Commission ("EEOC") proceedings at

which earlier claims of discrimination that he had brought were being heard.

       Donahoe denies these claims and moves for summary judgment on various grounds,

including, *inter alia*, that the evidence fails to establish a *prima facie* case of retaliation.  For the

following reasons, Donahoe's motion is granted.

I.      **Background**[1]

   A.     **Factual Background**

      1.     **Avillan's Job at USPS**

   Avillan, born in Puerto Rico in 1944, has worked for the USPS maintenance department since June 1999.  Def. 56.1 ¶¶ 1, 3; Chaudhury Decl., Ex. 3, at 4.  At all times relevant to this case, Avillan was assigned to the maintenance staff of the FDR Station Postal Facility ("FDR Station"), located at 909 Third Avenue, New York, New York 10022.  Def. 56.1 ¶ 2.

---

[1] This account of the facts of this case is drawn from the parties' pleadings and their submissions in support of and in opposition to the instant motion—specifically, the Declaration of Esther Rosario in support of defendant's motion for summary judgment ("Rosario Decl.") (Dkt. 45); Declaration of Richard E. Feuerstein in support of defendant's motion for summary judgment ("Feuerstein Decl.") (Dkt. 46) and attached exhibits; Declaration of Arastu K. Chaudhury in support of defendant's motion for summary judgment ("Chaudhury Decl.") (Dkt. 47) and attached exhibits; Supplemental Declaration of Michael Tam in support of defendant's motion for summary judgment ("Suppl. Tam Decl.") (Dkt. 60) and attached exhibits; Supplemental Declaration of Esther Rosario in support of defendant's motion for summary judgment ("Suppl. Rosario Decl.") (Dkt. 61) and attached exhibits; Supplemental Declaration of Arastu K. Chaudhury in support of defendant's motion for summary judgment ("Suppl. Chaudhury Decl.") (Dkt. 62); Defendant's Local Rule 56.1 Statement of Material Facts (Dkt. 55) ("Def. 56.1"); and Plaintiff's Response to Defendant's 56.1 Statement (Dkt. 50) ("Pl. 56.1").

Where facts stated in a party's Statement of Material Facts are supported by testimonial or documentary evidence, and denied by the opposing party in a conclusory statement that lacks citation to conflicting testimonial or documentary evidence, the Court finds such facts to be true. *See* S.D.N.Y. Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

### 2.    Avillan's Prior Lawsuits Against USPS

Avillan has had a long and litigious history with USPS; before this case, he had unsuccessfully brought four discrimination and retaliation actions against that agency in this court.[2]

On February 26, 2001, Avillan filed his first complaint, claiming that USPS had delayed hiring him in retaliation for his allegations that USPS had discriminated against him during the hiring process. *Avillan v. Potter*, No. 01 Civ. 1648 (SHS), 2002 WL 252479, at *1 (S.D.N.Y. Feb. 21, 2002). The court entered summary judgment for USPS because Avillan had failed to timely exhaust his administrative remedies. *Id.*

On November 16, 2004, Avillan filed a second complaint against USPS, making the same discriminatory hiring allegation; on this claim, the court entered summary judgment for USPS on *res judicata* grounds. *Avillan v. Potter*, No. 04 Civ. 9019 (PKC) (FM), 2006 WL 3103309, at *6–7 (S.D.N.Y. Nov. 1, 2006). Avillan's suit also included claims of racial, national origin, and age discrimination and retaliation. These related, *inter alia*, to (1) events between September 2000 to January 2001 regarding his suspension and termination (he was later reinstated), (2) the denial of his requests for annual leave, and (3) his taking on additional, allegedly hazardous work assignments. *Id.* at *4. The court entered summary judgment for USPS on these claims, because Avillan had failed to establish *prima facie* cases of discrimination and retaliation. *Id.* at *1.

---

[2] *See, e.g.*, *Avillan v. Donahue*, 12 Civ. 3370 (AJN) (S.D.N.Y. Feb. 15, 2013), at Dkt. 21, *aff'd sub nom. Avillan v. Donahue*, 568 F. App'x 73 (2d Cir. 2014) (summary order); *Avillan v. Potter*, No. 09 Civ. 4032 (RMB), 2011 WL 1044233 (S.D.N.Y. March 10, 2011), *aff'd sub nom. Avillan v. Donahoe*, 483 F. App'x 637 (2d Cir. 2012) (summary order); *Avillan v. Potter*, No. 04 Civ. 9019 (PKC) (FM), 2006 WL 3103309 (S.D.N.Y. Nov. 1, 2006); *Avillan v. Potter*, No. 01 Civ. 1648 (SHS), 2002 WL 252479 (S.D.N.Y. Feb. 21, 2002).

On December 11, 2009, Avillan filed a third complaint, again alleging national origin and race discrimination and retaliation; he claimed, *inter alia*, that USPS had (1) issued him a warning letter for being absent without leave, and (2) sent him home without pay. *Avillan v. Potter*, No. 09 Civ. 4032 (RMB), 2011 WL 1044233, at *1 (S.D.N.Y. March 10, 2011), *aff'd sub nom. Avillan v. Donahoe*, 483 F. App'x 637 (2d Cir. 2012) (summary order). The court again entered summary judgment for USPS because Avillan had failed to establish *prima facie* cases of discrimination and retaliation. *Id.* at *4–6.

Finally, on April 27, 2012, Avillan filed a fourth complaint, claiming that USPS discriminated against him because it had failed to promote him. *Avillan v. Donahue*, 12 Civ. 3370 (AJN) (S.D.N.Y. April 27, 2012), at Dkt. 1. The court dismissed the complaint because Avillan had failed to timely exhaust his administrative remedies. *Id.* (S.D.N.Y. Feb. 15, 2013), at Dkt. 21, *aff'd sub nom. Avillan v. Donahue*, 568 F. App'x 73 (2d Cir. 2014) (summary order).

### 3.  Avillan's Pre-Lawsuit Administrative Claims with the EEOC

In this lawsuit, Avillan alleges that USPS retaliated against him for attending Equal Employment Opportunity Commission ("EEOC") proceedings at which one or more of his earlier discrimination claims were being heard. Avillan claims that, although his supervisors had approved his requests for leave to attend these EEOC proceedings, he was not paid in full for those days—in other words, his pay was deducted when it should not have been.

Before bringing this action, Avillan first raised claims that he was denied payment for such days as EEOC administrative claims. There are two such claims: #4B-100-0033-10 ("first administrative claim") and #4B-100-0078-10 ("second administrative claim").[3] Feuerstein Decl.

---

[3] Avillan had previously filed at least 13 other administrative claims with the EEOC, in which he made other allegations against USPS. Feuerstein Decl. ¶ 3.

4

¶ 4.  As more fully developed below, Avillan's administrative claims identified only in general terms the dates on which he asserted he had been wrongly denied pay.  Only in the course of this litigation did Avillan identify the precise dates—which span 2005 through 2014—at issue.

By way of background, under EEOC regulations, a federal employee who believes that he has been the victim of race or national origin discrimination must contact an EEO counselor within 45 days of the act of discrimination to request an initial counseling session.  *See* 29 C.F.R. § 1614.105(a)(1).  Within 30 days of the request for such a session, the counselor must conduct a "final interview."  *Id.* § 1614.105(d).  If the dispute remains unresolved, the counselor then informs the employee in writing of his right to file a formal discrimination complaint with the agency.  *Id.*  Such a complaint must be filed within 15 days of receipt of the written notice.  *Id.* For age discrimination claims, a federal employee may elect either to proceed through the administrative process described above or, after giving 30 days' notice to the EEOC, proceed directly to federal court.  *See id.* § 1615.201; *Stevens v. Dep't of Treasury*, 500 U.S. 1, 5–6 (1991); *see also Wrenn v. Sec'y, Dep't of Veterans Affairs.*, 918 F.2d 1073, 1078 (2d Cir. 1990). Here, Avillan chose the administrative avenue of redress for all his claims.

***Avillan's first administrative claim (February 5, 2010)***:  On January 27, 2010, Avillan had a final interview with the EEO counselor.  Feuerstein Decl., Ex. 1, at 2–3.  On February 5, 2010, he filed his first administrative claim.  Def. 56.1 ¶ 18.  In it, Avillan alleged that various USPS supervisors had discriminated and/or retaliated against him on December 28, 2009.  *Id.* ¶ 19.  Specifically, he alleged that his supervisors "continue[d] to alter and enter false information in [his] pre-approved leave (PS form 3971) without [his] knowledge"[4] and altered his request of leave time to attend EEOC meetings and mediation sessions.  Feuerstein Decl., Ex. 1, at 2.  In

---

[4] The Court below explains the operation of USPS's leave forms, including the PS Form 3971.

effect, Avillan alleged, he had been approved to take leave to attend such meetings and sessions, but later, in an act of retaliation, had been misclassified as having been on leave without pay, and therefore went unpaid. *See id.* On September 17, 2010, Avillan supplemented this claim, so as to clarify that his pay had wrongly been withheld with respect to 10.1 hours when he claimed he had been, with prior approval, attending EEO meetings. *Id.*, Ex. 2, at 2. Avillan again did not identify which day(s) were associated with these 10.1 hours. *See id.*

**Avillan's second administrative claim (May 18, 2010)**:  On May 10, 2010, Avillan had a final interview with an EEO counselor. *Id.*, Ex. 3, at 2–3. On May 18, 2010, he filed his second administrative claim. Feuerstein Decl. ¶ 14. It similarly alleged that USPS supervisors had discriminated or retaliated against him, this time by wrongly denying him pay for more than 55 hours, when, he claimed, he had been attending, with prior approval, EEO meetings. *Id.* ¶¶ 15, 16. Avillan did not identify the specific days with which those hours were associated. *Id.* ¶ 17.

**The EEOC's Ruling (December 7, 2011)**:  On December 7, 2011, the EEOC conducted a hearing, and denied Avillan's claims. Feuerstein Decl., Ex. 4, at 2. On November 1, 2012, it issued Avillan a right to sue notice. *Id.* ¶ 19.

### B.    Procedural History of this Lawsuit

On January 23, 2013, Avillan filed a *pro se* complaint in this Court against Donahoe and USPS. Dkt. 1.

On January 30, 2014, after retaining counsel, Avillan filed an Amended Complaint, bringing, against Donahoe and USPS, claims under Title VII and the ADEA of disparate treatment, hostile work environment, and retaliation. Dkt. 25 ("Amend. Compl."). Factually, Avillan alleged, as acts of alleged retaliation, that (1) he had not been paid for certain approved leave requests; (2) he had not been given a "sick leave saver pin"; (3) on March 1, 2010, he had

been removed from the postal facility after questioning the change of his work assignment;
(4) on April 9, 2010, his work shift had been changed from the 3:45 p.m. to 12:00 a.m. shift to
the 12:00 a.m. to 9:00 p.m. shift; and (5) on September 2, 2010, he had been reassigned to work
in the subcellar of the postal facility.  *Id.* at 17–32.

On March 24, 2010, Avillan, in response to defendants' interrogatories, identified 39
dates (the "identified dates") as days for which, despite having received approval to take leave to
attend EEOC proceedings, he had not been paid.[5]  Dkt. 47, Ex. 6, at 10.

On July 15, 2014, following the close of discovery, the parties stipulated to the dismissal
with prejudice of all claims against USPS, and all claims against Donahoe, except Avillan's Title
VII and ADEA retaliation claims based on Avillan's claim that he was not paid for days on
which his leave requests had been approved.  Dkt. 40, at 2.

On August 1, 2014, Donahoe moved for summary judgment on Avillan's remaining
claims, Dkt. 43, and submitted a supporting memorandum of law, Dkt. 44 ("Def. Br.").  On
October 8, 2014, Avillan filed an affidavit in opposition, Dkt. 51 ("Pl. Aff."), which consisted of
approximately one page of conclusory statements and attached, *inter alia*, 57 copies of PS Forms
3971 and a handwritten list of dates and the purported reasons for Avillan's absences on them.
*Id.*  On November 3, 2014, Donahoe filed a reply.  Dkt. 54 ("Def. Reply Br.").

On January 6, 2015, the Court issued an order, directing Donahoe to supplement his
summary judgment submission with certain payroll evidence, which was implicitly referred to in

---

[5] These dates are October 4, 2005; December 13, 2005; January 4, 2006; July 31, 2006;
November 2, 2009; March 1, 10, 12, and 15, 2010; April 12, 26, and 27, 2010; May 7, 8, and 10,
2010; June 28, and 29, 2010; July 8, 2010; August 2, 3, and 19, 2010; September 7, 2010;
October 15, and 18, 2010; December 10, and 13, 2010; September 20, 21, and 22, 2011; October
11, and 12, 2011; November 10, 2011; December 6, 2011; May 8, and 9, 2012; July 3, 2013;
December 11, 2013; January 10, 2014; and March 11, 2014.  Def. 56.1 ¶ 21.

Donahoe's summary judgment submission.  Dkt. 56.  Specifically, Donahoe had represented that—contrary to Avillan's claims—Avillan's pay had not been reduced on the dates at issue in this case.  *Id.* at 2.  However, the Court noted, the documents that Donahoe had submitted to establish that point did not do so firsthand, but were in form of leave documentation (PS Forms 3972, *see infra* Section I.C.) that only implicitly reflected the fact of payment.  *Id.*  The Court therefore directed Donahoe to submit records that directly reveal whether or not Avillan had been paid for the periods in question.  *Id.* at 2–3.

On February 4, 2015, Donahoe filed a brief, Dkt. 59 ("Def. Suppl. Br."), as well as declarations and exhibits, Dkt. 60–62, in response to the Court's January 6 Order.

### C.    The Leave Request Process at USPS

Before addressing Donahoe's motion for summary judgment, the Court reviews the process by which leave requests at USPS were submitted and approved during the relevant period.  The Court does so because understanding this process is essential to evaluating that motion.

Before an USPS employee can take leave, including time off to participate in an EEO proceeding, the employee must submit a written leave request, which must then be authorized by his or her supervisor.  Def. 56.1 ¶ 7.  Specifically, the employee must fill out a PS Form 3971, which indicates the date the leave request was submitted, the date(s) for which the employee is seeking leave, the type of leave requested, and the reason for the leave.  *Id.* ¶ 8.  The employee's supervisor then reviews the PS Form 3971 and either approves or denies the request.  *Id.* ¶ 9.  If the requested leave is authorized, the PS Form 3971 is then forwarded to the payroll department, which is responsible for payment of employee salaries.  *Id.* ¶ 10.

To track leave taken by its employees, USPS uses PS Forms 3972. *Id.* ¶ 11. A PS Form 3972 identifies the type of leave taken by an employee for each day in a given year, including, *inter alia*, Absent Without Leave ("AWOL") and Leave Without Pay ("LWOP"). *Id.* ¶ 12. For example, if an employee fails to show up for or leaves work without authorized leave on a particular day, the PS Form 3972 would denote the employee's leave status for such a day as AWOL or LWOP. *Id.* ¶¶ 13, 15. The presence on a Form 3972 of an AWOL or LWOP designation is the means by which such a form denotes that the employee was not paid. *Id.* ¶ 20. Where an employee, with approval, takes time off to participate in an EEOC proceeding, USPS pays the employee in full for the day in question, and the PS Form 3972 tracks that day as if the employee was present at work for the full day. *Id.* ¶ 14.

USPS, of course, also tracks its payments and pay deductions, including for AWOL and LWOP, to its employees via payroll records. *See* Suppl. Tam Decl. ¶¶ 2–3. To denote leave, the payroll records use various codes: For AWOL, the code is 024; for a full-day LWOP, the code is 060; for a partial day LWOP, the code is 059. *Id.* ¶¶ 9–11.

## II.     Applicable Legal Standards

### A.     Summary Judgment

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of a question of material fact. In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to

9

particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).  Only disputes over "facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).  In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

### B.  Retaliation Under Title VII and the ADEA

Under Title VII, it is unlawful for an employer to discriminate against an employee because that employee "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e–3(a).  Title VII thus is violated when "a retaliatory motive plays a part in adverse employment actions toward an employee, whether or not it was the sole cause."  *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993).  The ADEA includes a nearly identical provision, prohibiting retaliation against employees who complain of employment discrimination on the basis of age. *See* 29 U.S.C. § 623(d); *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006).

In evaluating both Title VII and ADEA retaliation claims, "courts follow the familiar burden-shifting approach of *McDonnell Douglas Corp. v. Green*," 411 U.S. 792, 802–05 (1973).

*Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010).  To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) he participated in a protected activity; (2) participation in the protected activity was known to the employer; (3) the employer thereafter subjected him to a materially adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action.  *See id.*[6]  The burden of proof at the *prima facie* stage is "de minimis."  *Hicks*, 593 F.3d at 164.

Where a plaintiff has made allegations of discriminatory retaliation, courts must use "an extra measure of caution" in determining whether to grant summary judgment "because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence."  *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (citation omitted); *see also Chin-McKenzie v. Continuum Health Partners*, No. 10 Civ. 3658 (PAE), 2012 WL 2512942, at *6 (S.D.N.Y. June 29, 2012).  However, "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases."  *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted).  Thus, even in such cases, "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment."  *Holcomb*, 521 F.3d at 137.

---

[6] Although inapplicable in this case, the Court notes that "[a]t the summary judgment stage, if the plaintiff presents at least a minimal amount of evidence to support the elements of the claim, the burden of production shifts to the defendant to proffer a legitimate non-retaliatory reason for the adverse employment action. . . . If the employer produces such evidence, the employee must, in order to avoid summary judgment, point to evidence sufficient to permit an inference that the employer's proffered non-retaliatory reason is pretextual and that retaliation was substantial reason for the adverse employment action."  *Kaytor*, 609 F.3d at 552–53 (citation and internal quotation marks omitted).

### III.     Discussion

Donahoe moves for summary judgment on Avillan's Title VII and ADEA retaliation claims, making two arguments:  first, that Avillan's claims are time-barred, as to leave requests submitted before November 13, 2009; and second, that the evidence cannot establish a *prima facie* case of discrimination.

Donahoe also attacks Avillan's opposition papers as procedurally defective, again on two grounds.  First, he argues, by submitting a factual affidavit rather than a memorandum of law, Avillan has waived his right to oppose Donahoe's motion for summary judgment.  Second, he argues, the exhibits attached to Avillan's affidavit, to the extent not addressed in discovery, should be excluded under Federal Rule of Civil Procedure 37(c)(1).

The Court first addresses Donahoe's two procedural arguments, and then turns to his two substantive arguments.

### A.     Avillan's Failure to Submit a Memorandum of Law

Under Local Civil Rule 7.1, all motions and oppositions thereto shall include, *inter alia*, "[a] memorandum of law, setting forth the cases and other authorities relied upon in support of the motion."  The "failure to submit a memorandum of law, standing alone, is sufficient cause for granting or denying a motion.  It is not necessary to reach the merits." *Wenzhou Wanli Food Co., Ltd. v. Hop Chong Trading Co.*, No. 98 Civ. 5045 (JFK), 2000 WL 964944, at *3 (S.D.N.Y. July 11, 2000) (citation omitted).

Rather than submitting a memorandum of law in response to Donahoe's motion for summary judgment and supporting memorandum of law, Avillan—who is represented by counsel—filed an affidavit in opposition.  The affidavit bears no resemblance to a memorandum of law.  It is a little over a page long, rife with conclusory factual assertions and devoid of any

legal argument or case or statutory citations.   Such an affidavit does not comply with Local Rule 7.1.[7]   *See, e.g.*, *Genesi v. Int'l Portfolio, Inc.*, No. 12 Civ. 5462 (RA), 2012 WL 5964391, at *2 (S.D.N.Y. Nov. 29, 2012).   And the affidavit is essentially conclusory, recapitulating, for example, the allegation in the Amended Complaint that Avillan had been "discriminated against by the USPS for many years" by being denied payment for time while on approved leave.   Pl. Aff. ¶ 3.   Avillan's affidavit most centrally contends that the PS Forms 3972 are inaccurate, in that he was purportedly denied pay even on work days in which the forms do not reflect any leave.   *Id.* ¶¶ 5, 6.   Avillan does not, however, supply any corroboration of this claim.   *See infra* Section III.B.

Where a party fails to raise an "argument in his opposition to summary judgment," that "argument has been waived."   *Palmieri v. Lynch*, 392 F.3d 73, 87 (2d Cir. 2004); *see also Triodetic Inc. v. Statue of Liberty IV, LLC*, 582 F. App'x 39, 40 (2d Cir. 2014) (summary order) ("[P]laintiff never raised these arguments in its opposition to defendants' motion for summary judgment.   Accordingly, these arguments were waived."); *Aiello v. Stamford Hosp.*, 487 F. App'x 677, 678 (2d Cir. 2012) (summary order) ("The premise of our adversarial system is that [federal] courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argument by the parties before them.") (citation omitted).   Such is the case here.   The Court will, however, fully examine Donahoe's motion on the merits, because "courts, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is

---

[7] This also is not the first instance in which Avillan has failed to comply with the Rules of this Court in this case.   *See, e.g.*, Dkt. 41, at 2–4 (failing to respond to Donahoe's letter summarizing an anticipated summary judgment motion, as ordered under Individual Rule 3.H).

entitled to summary judgment as a matter of law." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (citation omitted); *see also Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted) (finding that a court has "broad discretion to determine whether to overlook a party's failure to comply with local court rules").

### B.    Exclusion of Avillan's Affidavit Exhibits

Avillan's affidavit in opposition attaches, as an exhibit, a list of dates for which he now claims he was wrongly not paid, appending numerous Forms 3971.  Pl. Aff., Ex. A.  Donahoe argues that the Court should strike that appended exhibit.  Def. Reply Br. 6, n.3.  The Court agrees.

Federal Rule of Civil Procedure 26(a) requires a party to produce as part of its initial disclosures "a computation of each category of damages claimed by the disclosing party—who must also make available . . . the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered." *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006); *Underpinning & Found. Skanska, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 726 F. Supp. 2d 339, 348 (S.D.N.Y. 2010).  A party that has responded to an interrogatory also "must supplement or correct its disclosure or response" in a timely manner. Fed. R. Civ. P. 26(e).  Under Rule 37(c)(1), "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion . . . unless the failure was substantially justified or is harmless."  The purpose of this rule "is to prevent the practice of 'sandbagging' an opposing party with new evidence."  *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004).  To determine if evidence should be precluded under Rule 37, courts must consider the party's explanation for his failure to comply with the discovery order, the importance of the new

evidence, the prejudice the opposing party would suffer were the new evidence considered, and the possibility of a continuance. *See Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997).  "The party that violates Rule 26 bears the burden of showing that its violation was either substantially justified or harmless." *Agence France Presse v. Morel*, 293 F.R.D. 682, 685 (S.D.N.Y. 2013).

Here, the dates reflected in Avillan's affidavit, and the attached PS Forms 3971, sweep well beyond the dates he identified in his interrogatory responses as ones for which he was unpaid.  By way of explanation, Avillan states that, at the time he responded to the interrogatory, he "could not recall each and every date for the past five . . . years that [he] was wrongfully denied official time."  Pl. Aff. ¶ 4.  Instead, his response to Donahoe's interrogatory listed "only those [dates] that [he could] recall at [that] time."  Chaudhury Decl., Ex. 6, at 10.  His interrogatory response also stated that he would "continue to search for documents that may refresh his recollection." *Id.*  Avillan's right to supplement these dates as discovery proceeded did not, however, entitle him to expand dramatically the scope of his claims well after discovery closed.  By the Court's count, Avillan now claims retaliatory non-payment as to 44 previously undisclosed work days.

The expansion of Avillan's claims at summary judgment is plainly prejudicial to Donahoe.  To meet these claims, it would require the reopening of discovery, and create "an unjustified drain on the resources of the parties." *523 IP LLC v. CureMD.Com*, No. 11 Civ. 9697 (KPF), 2014 WL 4746140, at *31 (S.D.N.Y. Sept. 24, 2014).  At a minimum, Donahoe would be required to locate and produce Avillan's leave requests and payroll records for those new dates.  Donahoe would also be entitled to probe, including through a reopened deposition of Avillan, Avillan's claim not only of non-payment but of *retaliatory* non-payment.

15

The Court also notes that the new evidence that Avillan submits is of little, if any, consequence.  Of the documents attached to the affidavit, only the 57 copies of PS Forms 3971, and Avillan's page of handwritten dates accompanied by handwritten explanations for his absences are of any apparent relevance to this case.  Pl. Aff., Ex. A.  But even these documents are of little merit.  The 57 PS Forms 3971 contain a number of duplicates[8]; others are illegible, irrelevant to Avillan's claims,[9] and/or not signed by Avillan's supervisor, making it unclear if they reflect approved leave at all.  Further, these documents do nothing to prove Avillan's non-payment on the dates at issue.  As for Avillan's handwritten explanations for his absences, they are more perplexing than probative.  The reasons given for Avillan's absence on particular dates include "NY Law School," "Chambers St.," and "Supreme Court = phone meeting."  Pl. Aff., Ex. A., at 40.  These notations, however, do nothing to prove non-payment, let alone retaliatory non-payment.  At most, they prove Avillan's absence on particular dates.  Without reopened discovery, Avillan's notations do not advance his case.

Accordingly, because Avillan's exhibits are delinquently offered and utterly non-probative, the Court therefore disregards them in resolving the motion for summary judgment.

**C.    Time-Barred Leave Requests**

"Under Title VII, a litigant must exhaust available administrative remedies in a timely fashion."  *Briones v. Runyon*, 101 F.3d 287, 289 (2d Cir. 1996).  Thus, a federal employee must comply with the applicable EEOC regulations, which set forth the specific exhaustion

---

[8] Avillan's submission contains duplicate PS Forms 3971 for at least seven dates: September 7, 2010, October 15, 2010 (3 copies), December 6, 2011, August 2, 2010, November 9, 2010, July 9, 2013, and January 14, 2014.

[9] Only some of the forms list "EEO/EEOC matters" as the purported reason for the leave request. Other reasons include, *inter alia*, "Harass by management, employee stress-out," "Annual Leave," and "sick."  *See* Pl. Aff., Ex. A.

requirements.  *See Belgrave v. Pena*, 254 F.3d 384, 386 (2d Cir. 2001); *Dillard v. Runyon*, 928 F. Supp. 1316, 1323 (S.D.N.Y. 1996), *aff'd* 108 F.3d 1369 (2d Cir. 1997).

The regulations applicable here require a federal employee who believes that he has been the victim of racial or national origin discrimination to contact an EEO counselor within 45 days of the date of the allegedly discriminatory act to request an initial counseling session.  *See* 29 C.F.R. § 1614.105(a)(1).  Within 30 days of this request, the counselor must conduct a "final interview"; if the dispute remains unresolved, the counselor is to inform the employee in writing of his right to file a formal discrimination complaint with the agency.  The complaint, in turn, must be filed within 15 days of receipt of the notice.  *Id.* § 1614.105(d).

Under the ADEA, a federal employee who believes that he has been discriminated against on the basis of age may either proceed through the EEOC administrative process described above or, after giving 30 days' notice to the EEOC, proceed directly to federal court. *See id.* § 1614.201; *Stevens*, 500 U.S. at 5–6; *see Wrenn*, 918 F.2d at 1078.  An employee who chooses to pursue the administrative process must first timely exhaust administrative remedies before pursuing an ADEA claim in federal court.  *See Baber v. Runyon*, No. 97 Civ. 4798 (DLC), 1998 WL 912065, at *3 (S.D.N.Y. Dec. 30, 1998) (citing *Wrenn*, 918 F.2d at 1078); *Tsai v. Helfer*, 940 F. Supp. 597, 601 (S.D.N.Y. 1996); *see also Belgrave*, 254 F.3d at 386.  Here, Avillan chose the administrative avenue of redress, meaning the requests for exhaustion as to his ADEA claims were the same as for his Title VII claims.

Neither party has provided evidence as to when Avillan's initial counseling session occurred.  However, under EEOC regulations, Avillan's final interview was required to have occurred within 30 days of Avillan's request for an initial counseling session.  29 C.F.R. § 1614.105(d).  Because Avillan's final interview occurred on January 27, 2010, Feuerstein

17

Decl., Ex. 1, at 2–3, the earliest he could have made his request was December 28, 2009, which is also a date when Avillan has claimed he was subjected to discrimination. *Id.* at 2. Accordingly, to the extent Avillan brings claims of retaliatory non-payment as to leave requests before November 13, 2009 (*i.e.*, 45 days before December 28, 2009), the claims are untimely.[10]

To be sure, Title VII and ADEA timing requirements are subject to equitable tolling and equitable estoppel. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982); *Braham v. State Ins. Fund*, No. 97 Civ. 7121 (DLC), 1999 WL 14011, at *2 (S.D.N.Y. Jan. 14, 1999.). Out of solicitude for Avillan, the Court has considered whether these doctrines apply. They do not. Equitable tolling applies "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin*, 498 U.S. at 96; *Dillman v. Combustion Eng'g, Inc.*, 784 F.2d 57, 61 (2d Cir. 1986) (equitable tolling is "invoked in cases where the plaintiff is ignorant of his cause of action because of the defendant's fraudulent concealment"). Equitable estoppel "is invoked in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay bringing his lawsuit." *Dillman*, 784 F.2d at 61 (citation omitted). "The burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff," *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000), and courts are "less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights," *Irwin*, 498 U.S. at 96.[11]

---

[10] Thus, Avillan's claims as to October 4, 2005; December 13, 2005; January 4, 2006; July 31, 2006; and November 2, 2009 claims are time-barred.

[11] "Equity will not actually lift the procedural bar, however, unless the plaintiff shows that he (1) was unaware of or unable to meet his procedural obligations (2) because of affirmative misconduct on the part of the defendant." *Avillan*, 2002 WL 252479, at *3; *see also Long v. Frank*, 22 F.3d 54, 59 (2d Cir. 1994) (finding that plaintiff must show reliance on affirmative

Here, however, there is no factual basis to claim, and Avillan does not argue, that he was unaware of, let alone misled about, the pertinent EEOC deadlines.  Quite the contrary, Avillan is an experienced EEO claimant, having previously filed 13 EEO administrative claims.  It is fair to infer that he has previously encountered EEOC regulations regarding the deadlines for claims. Indeed, a previous case he brought in this District involved similar problems with timeliness, and the district court delineated for Avillan the EEOC regulations regarding deadlines for claims. *See Avillan*, 2002 WL 252479, at *2.  Accordingly, all of Avillan's claims involving work dates before November 13, 2009—to wit, his October 4, 2005; December 13, 2005; January 4, 2006; July 31, 2006; and November 2, 2009 claims—are untimely.  Donahoe's motion for summary judgment on these claims is granted.

### D.    *Prima Facie* Case of Retaliation

Under Title VII, an employer cannot discriminate against an employee because that employee "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e–3(a).  The ADEA includes a nearly identical provision.  *See* 29 U.S.C. § 623(d); *Kessler*, 461 F.3d at 205.

As noted, to make out a *prima facie* case of Title VII and/or ADEA retaliation, a plaintiff must establish that: (1) he participated in a protected activity; (2) participation in the protected activity was known to the employer; (3) the employer thereafter subjected him to a materially adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action.  *See* pp. 10–11, *supra*.  In his retaliation claim, Avillan

---

misconduct); *Alston v. Heyman*, No. 98 Civ. 3640 (AGS), 1999 WL 4903, at *4 (S.D.N.Y. Jan. 5, 1999) ("Plaintiff is not entitled to an equitable tolling of the 15-day period of limitations because there is no evidence of any misconduct by defendant.").

alleges that he engaged in protected activity when he complained about racial, national origin, and age discrimination, and as a result of that activity, he was not paid for leave that was authorized by his supervisor.  Donahoe contends that Avillan cannot establish a *prima facie* case of retaliation because Avillan (1) fails to identify any materially adverse action taken against him in connection with his claims and (2) cannot show any causal connection between the adverse action and the protected activity.

For the following reasons, the Court agrees with Donahoe on these points, and therefore holds that Avillan has not established a *prima facie* case of retaliation and that summary judgment is merited for Donahoe.  The Court's assessment of the elements of a *prima facie* case of retaliation is as follows.

### 1.    Did Avillan participate in a protected activity?

Under Title VII, an employee engages in protected activity when he "has opposed any particular practice made an unlawful employment practice by this subchapter, or because [he] has made a charge . . . in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a); *see also Hicks*, 593 F.3d at 166.  The ADEA contains a similar provision.  *See* 29 U.S.C. § 623(d).  "There is no dispute that [a federal employee] participated in 'protected activity' under Title VII [and the ADEA] by seeking EEO counseling . . . and in filing . . . EEO complaint[s]."  *McGuire v. U.S. Postal Serv.*, 749 F. Supp. 1275, 1282 (S.D.N.Y. 1990); *see Avillan*, 2006 WL 3103309, at *16.

The parties do not dispute that Avillan participated in a protected activity.  Avillan sought EEO counseling on January 27, 2010, and May 10, 2010, and also filed formal EEO complaints on February 5, 2010, and May 18, 2010.  Thus, the Court finds that Avillan engaged in protected

activity when he received EEO counseling and lodged the formal complaints on the aforementioned dates.

### 2. Was Donahoe aware of Avillan's participation in a protected activity?

"Neither this nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the plaintiff has engaged in protected activity." *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000). Under the corporate knowledge doctrine, Avillan only need show that his employer, USPS, was aware of his complaints. *Id.* The parties do not contest that, measured by this standard, Donahoe, the Postmaster General of the USPS, was aware of Avillan's participation in the protected activity. Because Avillan received counseling and filed his complaints with the USPS's EEO Office, the Court finds that Avillan has adequately demonstrated Donahoe's awareness of his participation in protected activities.

### 3. Did Avillan sustain an adverse employment action?

A plaintiff sustains an adverse employment action if he endures a "materially adverse change" in the terms and conditions of employment. *See Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks omitted). Employer actions "are 'materially adverse' if they are 'harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Hicks*, 593 F.3d at 165 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). Actions "sufficiently disadvantageous" so as to constitute an adverse employment action "include a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices

unique to a particular situation." *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) (citation and internal quotation marks omitted).

Here, Avillan alleges that though he had received his supervisor's approval for leave requests to attend EEO/EEOC proceedings, he was not paid for those dates. The Court assumes *arguendo* that the withholding of pay to which Avillan was entitled for working on the 34 dates covered by this action would qualify as an adverse employment action.

Avillan, however, has not come forward with any evidence to substantiate his claim that he was in fact not paid for those dates as to which his leave had been approved. *See* Pl. Aff. And Donahoe, for his part, has come forward with unrefuted proof that dismantles Avillan's claim. In particular, Donahoe has produced Avillan's payroll records and leave request forms for the dates at issue. These establish conclusively that, of the 34 non-time-barred dates on which Avillan bases his claim, there were literally *no* days as to which Avillan received approval for leave, but was not paid. *See* Def. Suppl. Br. 2; Rosario Decl. ¶¶ 18, 19.

On the contrary, the unrefuted evidence reflects that:

- For 24 of the 34 dates, Avillan was timely paid in full for the entire payroll records period;

- For nine of the dates, USPS made pay deductions during the applicable payroll record period, but USPS later reversed those deductions such that Avillan was paid in full; and

- For one date, Avillan did not have approved leave, but instead was absent from work without approved leave, and on that basis, was not paid.

Specifically:

*No pay deductions made (24 dates)*:  Each USPS payroll record shows the payments and pay deductions USPS made to Avillan over the course of a two-week pay period, broken down by week.  The records for 15 such pay periods, which span 24 of the 34 dates at issue,[12] reflect that Avillan was paid in full during those pay periods.  Suppl. Tam Decl. ¶¶ 2–15; *id.* Ex. B–F, H, J, L–N, P–R, T–V.  These payroll records also do not report any LWOP or AWOL hours.  Consistent with this, the PS Forms 3972 for the aforementioned dates also do not contain any LWOP or AWOL codes.  Dkt. 47, Ex. 5, at 12–13, 15–16, 19–20.  On the unrebutted evidence, Avillan was paid in full for these dates and has no basis to claim an adverse employment action as to them.

*Pay deductions made and later reversed (nine dates)*:  As to nine dates,[13] Avillan's payroll records reflect that he was originally designated AWOL or LWOP, largely because he had not been approved in advance for leave, but that he was later paid in full for all nine dates.  Specifically:

*March 1, 2010*:  On that date, Avillan had an altercation with a co-worker, and was escorted by the U.S. Postal Inspection Service Security Force from FDR Station.  Suppl. Rosario Decl. ¶ 6; *id.*, Ex. A.  On that basis, Avillan's supervisor placed Avillan on emergency off-duty status, and his payroll records reflect that 7.77 of his hours were denoted as LWOP.  *Id.* ¶ 7; *id.*, Ex. B; Suppl. Tam Decl. ¶ 16; *id.*, Ex. B.[14]  However, on July 13, 2010, Avillan's pay status was

---

[12] These dates are March 10, 12, and 15, 2010; April 12, 26, and 27, 2010; May 7, 8, and 10, 2010; July 8, 2010; August 19, 2010; October 15, 2010; December 10, and 13, 2010; September 20, 21, and 22, 2011; November 10, 2011; December 6, 2011; May 8, and 9, 2012; December 11, 2013; January 10, 2014; and March 11, 2014.

[13] These dates include March 1, 2010; June 28, and 29, 2010; August 2, and 3, 2010; September 7, 2010; October 18, 2010; October 11, 2011; and July 3, 2013.

[14] Avillan failed to submit a leave request for March 1, 2010.  Suppl. Rosario Decl. ¶ 5.

adjusted so that Avillan was paid for that day.  Suppl. Rosario Decl. ¶ 8; *id.*, Ex. C; Suppl. Tam

Decl. ¶¶ 25–27; *id.*, Ex. H.  Consistent with this, the PS Form 3972 for March 1, 2010 reflects

that Avillan did not receive an AWOL or LWOP designation for that day.  Dkt. 47, Ex. 5, at 12.

*June 28–29, 2010*:  Avillan did not submit a leave request for June 28, 2010, and was

paid in full for this date.  Suppl. Rosario Decl. ¶ 9.  That day, however, he submitted a PS Form

3971 for leave to attend "EEO/EEOC matters" on June 29, 2010, Suppl. Chaudhury Decl., Ex. A.

However, his leave request was denied.  *Id.*  On June 29, 2010, Avillan did not go to work;

accordingly, his payroll records for that week reflect eight LWOP hours.  Suppl. Rosario Decl.

¶ 11; Suppl. Tam Decl. ¶ 28; *id.*, Ex. G.  On November 29, 2010, however, Avillan's supervisor

adjusted Avillan's pay status for June 29, 2010, from LWOP to paid hours, such that he was paid

for them.  Suppl. Rosario. Decl. ¶ 12; *id.*, Ex. D; Suppl. Tam Decl., Ex. W.  Consistent with the

later pay adjustment, the PS Form 3972 covering June 28, 2010 and June 29, 2010 does not

reflect an AWOL or LWOP designation.  Dkt. 47, Ex. 5, at 12.

*August 2–3, 2010*:  Similarly, Avillan did not submit a leave request for August 2, 2010,

Suppl. Rosario Decl. ¶ 13, and was paid in full, but that day, he filed a leave request for the

following day August 3, 2010, to attend to "EEO/EEOC matters."  Suppl. Chaudhury Decl., Ex.

B.  This request was denied because the supervisor could "not grant [additional] leave."  *Id.*

Again, Avillan received 2.01 AWOL hours for that week, Suppl. Tam Decl. ¶ 29, *id.*, Ex. I, and

again, on November 29, 2010, Avillan's hours were adjusted so that he was paid in full for that

week.  Suppl. Rosario Decl. ¶ 16; *id.*, Ex. E; Suppl. Tam Decl. ¶ 29; *id.*, Ex. W.  Consistent with

the later pay adjustment, the PS Form 3972 covering August 2–3, 2010 does not reflect an

AWOL or LWOP designation.  Dkt. 47, Ex. 5, at 13.

*September 7, 2010*:  On this day, Avillan submitted a same-day leave request for "stress out due to management persistent harassment," which was denied.   Suppl. Chaudhury Decl., Ex. B.  Avillan left work after submitting the request, and his payroll records reflect that he was designated as AWOL for the remainder of the day (7.5 hours).  Suppl. Rosario Decl. ¶ 18; Suppl. Tam Decl. ¶ 30; *id.*, Ex. K.  On November 29, 2010, however, the same day that Avillan's pay for other days was restored, it was adjusted for September 7, 2010, such that he was paid in full for that week.  Suppl. Rosario Decl. ¶ 19; *id.*, Ex. F; Suppl. Tam Decl. ¶ 30; Ex. W.  Consistent with the later pay adjustment, the PS Form 3972 for September 7, 2010 does not reflect an AWOL or LWOP designation.  Dkt. 47, Ex. 5, at 13.

*October 18, 2010*:  For this day, Avillan submitted a leave request for "EEO-EEOC mediation" that was approved, Suppl. Chaudhury Decl, Ex. C, but his payroll records for the pay period show that Avillan incorrectly received a LWOP designation for eight hours, Suppl. Rosario Decl. ¶ 21; Suppl. Tam Decl. ¶ 31; *id.*, Ex. L.  However, on November 29, 2010, this deduction was corrected:  Avillan's supervisor adjusted those hours to paid hours, and Avillan was paid for that date.  Suppl. Rosario Decl. ¶ 22; *id.*, Ex. G; Suppl. Tam Decl. ¶ 31; *id.*, Ex. W.  Consistent with the later pay adjustment, the PS Form 3972 for October 18, 2010 does not reflect an AWOL or LWOP designation.  Dkt. 47, Ex. 5, at 13.

*October 11, 2011*:  Avillan did not submit a leave request for this date, and was paid in full for that day; the AWOL designation he received for that week was for his absence on October 12, 2011, which is discussed below.  Suppl. Rosario Decl. ¶¶ 23, 26–28.  Consistent with this, the PS Form 3972 for October 11, 2011 does not reflect an AWOL or LWOP designation.  Dkt. 47, Ex. 5, at 15.

*July 3, 2013*:  Avillan did not submit a leave request for this day, and received full pay for his work.  Suppl. Rosario Decl. ¶¶ 31–32.  Rather, the AWOL designation he received for that payroll record week was for an unapproved absence on July 5, 2013, which is not a date at issue in this lawsuit.  Suppl. Tam Decl. ¶ 22; *id.*, Ex. S; Suppl. Rosario Decl. 33–34.[15] Consistent with this, the Form PS 3972 for July 3, 2013 does not reflect an AWOL or LWOP designation.  Dkt. 47, Ex. 5, at 18.

**Pay deduction made for unapproved leave (*one date*)**:  On September 26, 2011, Avillan's supervisor was notified by USPS legal counsel that Avillan was scheduled to participate in an October 12, 2011 telephone conference for an EEO-related proceeding.  Suppl. Rosario Decl. ¶ 24; *id.*, Ex. H.  Counsel advised Avillan's supervisor that USPS should make a private room and a telephone available for Avillan to use at the FDR Station, where Avillan works, at the time of the call so that Avillan could participate.  *Id.* ¶ 24; *id.*, Ex. H.  This arrangement was made, and on or about September 26, 2011, Avillan was informed of it.  *Id.* ¶ 25.  However, on October 11, 2011, Avillan submitted a leave request for a full day's leave on October 12, 2011 for "EEO/EEOC matters."  *Id.* ¶ 26; *id.*, Ex. I.  On October 11, 2011, Avillan's supervisor denied his leave request, and explained that the USPS had made a private room and telephone available to Avillan so that he could participate in the telephone conference.  *Id.* ¶ 27; *id.*, Ex. H.  However, on October 12, 2011, Avillan did not show up for work, and later received a letter of warning from USPS.  *Id.* ¶¶ 28–29; *id.*, Ex. J–K.  Avillan also was given eight hours of AWOL for this week, Suppl. Tam Decl. ¶ 21; *id.*, Ex. O; USPS has not adjusted Avillan's hours

---

[15] On July 3, 2013, Avillan submitted a leave request for July 5, 2013, which was denied, Suppl. Rosario Decl. ¶ 33; Suppl. Chaudhury Decl., Ex. D, and resulted in his being designated AWOL for eight hours that week.  Suppl. Tam Decl. ¶ 22; *id.*, Ex. S; Suppl. Rosario Decl. 33–34.

for that day, Suppl. Rosario Decl. ¶ 30.  For that reason, Avillan's PS Form 3972 for October 12, 2011 reflects an AWOL designation.  Dkt. 47, Ex. 5, at 15.

In sum, the assembled evidence refutes the necessary premises of this lawsuit.  First, it shows that, as to 33 of the 34 dates, Avillan was paid for his work.  As to those dates, Avillan cannot claim an adverse employment impact.  Further, insofar as Avillan's claim of retaliation turns on the premise that he was entitled to pay because he had approved leave, for 32 of these 33 dates, all but October 18, 2010, Avillan did not have approved leave as of the date that he did not appear at work, and in many instances he had not even submitted a leave request.  As to the final date, October 12, 2011, although Avillan did not receive pay for that day, the uniform evidence at summary judgment is that he was not entitled to it:  His request for leave was denied, and he did not show up at work.[16]  Therefore, as to none of these 34 days could a jury, based on the evidence adduced at summary judgment, find both that Avillan had approved leave (and therefore an entitlement to pay) and that he was denied pay.

In light of this, the indispensable element of an adverse employment impact cannot be found based on the evidence.  For this reason, summary judgment must be granted for Donahoe on Avillan's retaliation claims under Title VII and the ADEA.

---

[16] Even if the evidence did permit a trier of fact to find that Avillan was entitled to pay on a single day but was denied, the denial of a single day's pay would not constitute a materially adverse employment action.  *See, e.g.*, *Gibson v. Wyeth Pharms., Inc.*, No. 07 Civ. 946 (LTS) (GAY), 2011 WL 830671, at *7 (S.D.N.Y. Mar. 9, 2011) (finding that a three-day suspension that may or may not have been without pay did not rise to the requisite level of materiality where there was no evidence that "the suspension worked such an alteration in the terms and conditions of Plaintiff's employment"); *Polanco v. 34th St. P'ship, Inc.*, 724 F. Supp. 2d 420, 426 (S.D.N.Y. 2010) (holding a one-day suspension not a material adverse employment action); *Dobrynio v. Cent. Hudson Gas & Elec. Corp.*, 419 F. Supp. 2d 557, 564–65 (S.D.N.Y. 2006) ("[B]eing suspended [without pay] for a single day, with no long term consequences whatever, is not an actionable adverse employment action because it is not *material.*").

### 4.   Was there a causal nexus between Avillan's protected activities and the denial of pay to him?

Avillan's retaliation claims fail for a separate reason.  As noted, there is only one day (October 12, 2011) on which he was not paid.  Even assuming—contrary to all evidence—that he was entitled to be paid for that day despite his absence from work and the lack of approval for leave, a reasonable jury could not find that the denial of such pay was the product of retaliation.  Put differently, a jury could not find a causal link between (1) Avillan's protected activities (his seeking EEO counseling in January and May 2010 and filing EEO complaints in February and May 2010) and (2) the denial of pay on October 12, 2011.

Causation of an adverse employment action traceable to a protected activity may be established "'either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'"  *Moccio v. Cornell Univ.*, 889 F. Supp. 2d 539, 587 (S.D.N.Y. 2012) (quoting *Hicks*, 593 F.3d at 170 (2d Cir. 2010)), *aff'd*, 526 F. App'x 124 (2d Cir. 2013) (summary order).  In addressing this issue, "the court's role . . . is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive."  *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) (citing *Donahue v. Windsor Locks Bd. of Fire Comm'rs.*, 834 F.2d 54, 58 (2d Cir. 1987)).

Here, the record is devoid of direct evidence of discriminatory animus:  Avillan does not recall, and has presented no evidence of, any USPS supervisor employee ever linking a pay or

leave decision—let alone the specific decision to deny him pay for October 12, 2011—to his participation in EEOC proceedings.  Def. 56.1 ¶ 5; *see generally* Pl. Aff.[17]

As to circumstantial evidence, the occurrence of an adverse employment action shortly after protected conduct may give rise to an inference of causation so as to make out a *prima facie* case of retaliation.  "Close temporal proximity between the plaintiff's protected action and the employer's adverse employment action may itself be sufficient to establish the requisite causal connection between a protected activity and retaliatory action."  *Kaytor*, 609 F.3d at 552; *see also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'").

The Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action."  *Gorman-Bakos v. Cornell Co-op. Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001).  However, "courts in this Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation."  *Flood v. UBS Global Asset Mgmt., Inc.*, No. 10 Civ. 374 (RJH), 2012 WL 288041, at *17 (S.D.N.Y. Feb. 1, 2012) (citing *Frisenda v. Inc. Vill. of Malverne*, 775 F. Supp. 2d 486, 512 (E.D.N.Y. 2011)); *see also Chin-McKenzie*, 876 F. Supp. 2d at 287 (collecting cases).

Avillan has not argued that the denial of pay on October 12, 2011 so closely followed his

---

[17] Avillan also does not recall, or present any evidence of, any USPS employee's having made any derogatory comment or otherwise acting in a discriminatory fashion to Avillan regarding his age, national origin, or race.  Def. 56.1 ¶ 4.

participation in EEOC proceedings as to support an inference of retaliation.  And the evidence would not support any such finding.  Avillan's protected activities, as found by the Court, occurred on January 27, 2010, and May 10, 2010, when he sought EEO counseling, and on February 5, 2010, and May 18, 2010, when he filed formal EEO complaints.  Those dates preceded by well over one year the one day on which the evidence supports that Avillan was denied pay.  This time lapse is too long to establish a temporal nexus. *See Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005) ("Three months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit an inference of causation."); *Nicastro v. Runyon*, 60 F. Supp. 2d 181, 185 (S.D.N.Y. 1999) (three months too remote). And, even if these events were far closer in time, the denial of employee's pay on a single day when he was concededly absent from work is a sufficiently quotidian event as to not give rise, without more, to an inference of retaliation.

Accordingly, on the evidence presented on this motion and drawing all reasonable inferences in Avillan's favor, no reasonable jury could find a *prima facie* case of retaliation on these claims.

## CONCLUSION

For the reasons stated herein, Donahoe's motion for summary judgment is hereby granted.  The Clerk of Court is directed to terminate the motion pending at docket number 43 and to close this case.

30

SO ORDERED.

_____
Paul A. Engelmayer
United States District Judge

Dated:   February 19, 2015
         New York, New York